```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
LUIS REYES FLORES,                                              :
                                                                :
                        Plaintiff,                              :
                                                                :
                                                                :       **REPORT &**
            -against-                                           :       **RECOMMENDATION**
                                                                :
                                                                :       1:19-CV-6380 (ENV)(PK)
                                                                :
MICHAEL URCIUOLI and BIONIC BAGEL                               :
CORP. d/b/a BIONIC BAGELS and                                   :
BIONIC BAGELS & DELI, INC.,                                     :
                                                                :
                        Defendants.                             :
--------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Luis Reyes Flores ("Plaintiff") filed a Motion for Judgment Based on Settlement and for a Finding of Fairness in this case against Defendants Michael Urciuoli and Bionic Bagel Corp. (collectively, "Defendants").[1] ("Motion," Dkt. 16.) The Honorable Eric N. Vitaliano referred the Motion to the undersigned for a Report and Recommendation. (Minute Order dated Mar. 10, 2021.)

For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's Motion be granted.

## BACKGROUND

On November 11, 2019, Plaintiff commenced an action against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.* ("NYLL"). ("Compl.," Dkt. 1.) Plaintiff alleged that Defendants failed to pay minimum wage, overtime compensation, and spread of hours pay during the course of his employment. (Compl. ¶¶ 4-5.) Defendant Urciuoli is the sole shareholder of the corporate Defendant Bionic Bagel Corp.

---

[1] Defendant Bionic Bagels & Deli Inc. was sued as a successor in interest and has not appeared before the Court. (Compl. ¶ 2.) It was not a party to the settlement agreement.

1

(Defs.' Counsel Decl. in Opp. to Pl.'s Motion ("Helbig Decl.") ¶ 14, Dkt. 17.)

Upon Court referral to the EDNY Court-Annexed Mediation Program, the parties, assisted by counsel, engaged in a virtual mediation session with James A. Brown (the "Mediator") on November 12, 2020. (Helbig Decl. in Opp. ¶ 16.) Except for a brief period, the parties were in separate virtual rooms during the mediation session, with the Mediator conveying information between them, including all information regarding "potential witnesses or evidence [the parties] might produce at trial." (Hearing Transcript dated June 3, 2021 ("Tr.") at 5:16-6:9, Dkt. 19; Decl. of Colin Mulholland, Esq. in Reply to Defs.' Opp. ("Mulholland Reply Decl.") ¶ 8, Dkt. 18.) Plaintiff never spoke directly to the Defendants during the mediation session. (Tr. at 5:23-6:3.)

At the conclusion of the mediation, the parties agreed to settle the matter, and the terms of their settlement were set forth in a written agreement dated November 12, 2020, signed by both Plaintiff and Defendant Urciuoli (on behalf of both appearing Defendants) ("Mediation Agreement," Dkt. 15-1). (Decl. of Colin Mulholland, Esq. in Support of Pl.'s Motion ("Mulholland Decl.") ¶ 8, Dkt. 16-1.) The Mediation Agreement states that Defendants agreed to pay Plaintiff $45,000.00, inclusive of attorney's fees, in eight successive monthly installments beginning two weeks after the Court's approval of the settlement. (Mediation Agreement ¶ 1.) As consideration, Plaintiff agreed to release the claims in this lawsuit. (*Id.* ¶ 2; Tr. at 4:10-21.) The Mediation Agreement further states that the parties agreed to settle the case on these terms "and pursuant to a more formal settlement agreement which the parties agree to draft." (Mediation Agreement at 1.) The parties agreed that the Court would be asked to perform its review pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) based on the more formal settlement agreement.

While finalizing the Mediation Agreement, counsel for both parties communicated via email with the Mediator about additional terms they wanted included as part of the agreement. (Helbig Decl. ¶ 6; Ex. A to Helbig Decl., Dkt. 17-2.) Plaintiff's counsel proposed including a provision that

Defendants execute a confession of judgment for twice the settlement amount. (Ex. A to Helbig Decl. at 2 (page numbers refer to ECF pagination).) Defense counsel requested a provision in which Plaintiff "represents he has no knowledge of any similar suits which will be filed, including, but not limited to, his brother who was employed at the store." (*Id.* at 3.) Ultimately, at the Mediator's suggestion, these two provisions were not included in the Mediation Agreement; Plaintiff's counsel emailed Defendants' counsel, "I guess we'll have to talk about all of these issues in the final draft. [The Mediator] wants us to keep the memorandum of understanding simple." (*Id.* at 4.)

On December 11, 2020, Plaintiff's counsel emailed a proposed Settlement Agreement and Release (Ex. C to Helbig Decl. ("Proposed Agreement"), Dkt. 17-4) to Defendants' counsel. (Helbig Decl. ¶ 21.) The Proposed Agreement included a confession of judgment to be executed by Defendants for "$90,000.00 less any payments made prior to the default" which Plaintiff could file in the event of default on the payment plan and failure to cure. (Proposed Agreement § 2(b).) The Proposed Agreement did not include Defendants' request that Plaintiff represent he "had no knowledge of any similar suits which will be filed, including, but not limited to his brother." (Helbig Decl. ¶ 5.) Defendants refused to sign the Proposed Agreement. (Mulholland Decl. ¶ 9; Helbig Decl. ¶ 8; "Defs. Opp. Mem." at 2 (page numbers refer to ECF pagination), Dkt. 17-1.)

On March 5, 2021, Plaintiff filed the Motion, requesting a settlement judgment and finding of fairness pursuant to *Cheeks*. Thereafter, Defendants filed their opposition (Dkt. 17), and Plaintiff filed his reply (Dkt. 18). The Court held a motion hearing on June 3, 2021, at which Plaintiff appeared but Defendants did not. (Minute Entry dated June 3, 2021.) The Court granted the parties leave to reopen the hearing to present additional information. (Tr. at 7:18-20.) Neither party made such a request.

## DISCUSSION

### I. Enforceability of the Settlement Agreement

Plaintiff requests that the Court enter a settlement judgment, which contains the terms of the

3

Mediation Agreement, along with more detailed provisions regarding the logistical aspects of payment of the settlement amount and any failure to pay. (*See* Proposed Order of Settlement and Dismissal ("Proposed Order"), Dkt. 16-6.) The Proposed Order characterizes Plaintiff's request as one to enforce the Mediation Agreement. (*See id.* at 2 ("Plaintiff Luis Reyes Flores has moved to enforce the written statement signed by the parties on November 12th, 2020").) Therefore, despite Plaintiff's request that the Court enter the Proposed Order as a settlement judgment, the undersigned considers the Motion as one to enforce a settlement agreement on the basis that the Mediation Agreement is a valid and enforceable settlement agreement under the principles of New York contract law.

Defendants assert that there is no enforceable agreement because Plaintiff made unilateral changes to the terms of the settlement by adding a provision regarding a confession of judgment and omitting a material term, *i.e.*, a representation by Plaintiff regarding the lack of similar lawsuits. (Defs. Opp. Mem. at 4; Helbig Decl. ¶¶ 5, 8.) They also contend that any agreement reached at mediation should be voided because it was secured as a result of fraud. (Defs. Opp. Mem. at 4.)

### A. Applicable Law

A settlement agreement is a binding and enforceable contract between the parties, which is subject to general principles of contract law. *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006) (applying New York contract law to enforce settlement agreement between parties in federal court); *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)). "[T]he fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties" on all material terms. *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 576 (2d Cir. 1983). Under the general principles of contract law, contract "[f]ormation requires 'an offer, acceptance, consideration, mutual assent and an intent to be bound.'" *Nowak v. JPMorgan Chase & Co.*, 847 F. App. 31, 34 (2d Cir. 2021) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).

"Settlement agreements are strongly favored in New York and may not be lightly cast aside." *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). A party may be relieved of its obligations under a settlement agreement only when there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake, or accident. *Consol. Edison Co. of N.Y., Inc. v. Fyn Paint & Lacquer Co.*, No. 00-CV-3764, 2008 U.S. Dist. LEXIS 25097, at *16 (E.D.N.Y. Mar. 28, 2008) (omitting quotation); *Downes v. O'Connell*, 103 F. Supp. 2d 579, 582 (E.D.N.Y. 2000).

A court may find that a preliminary agreement is binding when "the parties have reached complete agreement (including the agreement to be bound) on all of the issues perceived to require negotiation. Such an agreement is preliminary in form – only in the sense that the parties desire a more elaborate formalization of the agreement." *Tchrs. Ins. & Annuity Ass'n of Am. v. Trib. Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987); *see also Lewis v. New York City Transit Auth.*, No. 04-CV-2331 (SLT)(MDG), 2015 U.S. Dist. LEXIS 84086, at *3-14 (E.D.N.Y. June 24, 2015) (enforcing terms of signed term sheet after mediation that contemplated further memorialization in a final settlement agreement); *Trolman v. Trolman, Glaser & Lichtman, P.C.*, 114 A.D.3d 617, 618 (2014) (finding enforceable settlement agreement although "certain non-material terms were left for future negotiation" and the parties agreed to "promptly execute formal settlement papers").

A contract that demonstrates the parties' intent to settle the case and is executed by the parties is normally demonstrative of the parties' intent and enforceable unless there is specific language that limits the agreement. *Compare*, *Delyanis*, 465 F. Supp. 2d at 172, 174 (finding parties' "Agreement to Settle" was not an enforceable agreement where it specifically stated that it was "not intended to be a legally enforceable settlement contract"); *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (finding no intent to be bound where agreement, *inter alia*, "outlined a framework of negotiation" for additional terms, stated terms that would be "'subject to mutual agreement,'" and

5

contained other terms that "'will be negotiated'"). Absent such limiting language evidencing the parties' intention not to be bound until they executed a formal agreement, "the mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." *V'Soke v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968). *See also Suarez v. SCF Cedar, LLC*, No. 13-CV-7420 (ALC)(RLE), 2016 WL 6601547, at *2 (S.D.N.Y. Mar. 14, 2016), *R&R adopted*, 2016 WL 6601549 (S.D.N.Y. Nov. 7, 2016) (enforceable contract found where term sheet did not state that it is an interim and non-binding agreement, and provided that the attorneys were to "provide a more formalized agreement" of the terms).

Thus, in determining whether an agreement to settle a case is binding, the court considers whether the parties intended to be bound by that agreement, and whether the agreement unambiguously sets forth all material terms.

Here, the parties' intent to be bound by the Mediation Agreement is clear. The Mediation Agreement itself states that "the parties *have settled* the above-captioned matter subject to the terms below and pursuant to a more formal settlement agreement which the parties agree to draft." (Mediation Agreement at 1 (emphasis added).) The Mediation Agreement does not state that the parties merely <u>intended</u> to settle, nor does it contain language limiting the agreement's binding effect. It does not identify areas subject to future negotiations. Furthermore, the Mediation Agreement was signed by the parties following a mediation with a neutral mediator, during which they were represented by counsel. *See McNamara v. Tourneau, Inc.*, 464 F. Supp. 2d 232, 239 (S.D.N.Y. 2006) (finding settlement stipulation to be a fully binding contract, not mere agreement to continue negotiations, where agreement was reached through court-ordered mediation, both parties were represented by counsel, and the stipulation "clearly states that the parties reached an agreement to settle the case" on stated terms).

The undersigned also finds that all material terms were clearly and unequivocally stated in the Mediation Agreement. The Mediation Agreement contains the parties' agreement on the amount of money to be paid, a schedule for payment, and release of the claims in the lawsuit. *See Suarez*, No. 13-CV-7420 (ALC)(RLE), 2016 WL 6601547, at *3 (finding parties intended to be bound by term sheet which was a complete agreement on material terms, containing monetary and non-monetary terms, a fully contemplated timeframe, and plan for payment).

Defendants contend that "the material terms of the mediation agreement have been unilaterally modified by Plaintiff," such that there is no "'meeting of the minds'" to create an enforceable contract. (Helbig Decl. ¶ 10.) Specifically, Defendants complain that the subsequent Proposed Agreement contains a provision not included in the Mediation Agreement (a confession of judgment) and omits another provision it claims is a material term (Plaintiff's representation regarding the lack of similar lawsuits). (*Id.* ¶ 8.) However, the later drafted Proposed Agreement is not at issue here. Rather, Plaintiff has made clear that he is seeking enforcement of the terms in the signed Mediation Agreement, without the inclusion of any confession of judgment. (Pl. Reply Mem. at 3.) Furthermore, the additional term proposed by Defendants— that Plaintiff does not know of similar lawsuits to be filed, including by his brother—is not a material term; Plaintiff's knowledge or lack of knowledge has no bearing on whether such a lawsuit will be brought, especially since Plaintiff cannot—and in the context of the FLSA, should not—curtail the actions of anyone else in bringing a separate lawsuit. *See Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015) (declining to approve FLSA settlement agreement containing non-disclosure provision on the basis that "[f]ear of copycat lawsuits or embarrassing inquiries does not suffice to defeat" Congress's intent "to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace" (citations and quotations omitted).)

Because the parties intended to be bound by the Mediation Agreement, and the Mediation Agreement unambiguously contains all material terms, the undersigned finds that the Mediation Agreement constitutes a valid and enforceable settlement agreement.

### B. Claim of Invalidity Based on Fraud

Defendants argue that the Mediation Agreement should be "vacated" because Plaintiff fraudulently induced Defendants to enter the settlement by providing false information during the mediation.[2] (Defs. Opp. Mem. at 3-4.) Specifically, Defendants claim that Plaintiff made a material, misleading statement regarding witness testimony in order to induce Defendants to settle. (*Id.* at 4.) Through the Mediator, Defendants told Plaintiff of their intention to call former Bionic Bagel Corp. employees as witnesses to testify regarding Plaintiff's work hours. (Helbig Decl. ¶ 17.) "In response, Plaintiff and/or his counsel permitted [the Mediator] to divulge to Defendant and counsel that they too intended on calling the **same witnesses**, and the witnesses would substantiate Plaintiff's claims." (*Id.* ¶ 18 (emphasis in original).) Defendants contend that because the consequences of those witnesses testifying for Plaintiff would be financially "devastating," "[b]ased **solely** upon this material fact and representation, Defendants agreed to settle this action for the amount set forth in the [M]ediation [A]greement." (*Id.* ¶ 19 (emphasis in original).) Defendant Urciouli subsequently had contact with the former employees, "including Plaintiff's brother, who uniformly stated they would **not** testify for Plaintiff, and had not had any contact with Plaintiff in over two (2) years." (*Id.* ¶ 20 (emphasis in original).)

"Settlement agreements, like other contracts, may be rescinded for fraud or mutual mistake." *N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, 998 F. Supp. 2d 301, 318 (S.D.N.Y. 2014). Under New

---

[2] Defendants also contend that the Mediation Agreement should be vacated "due to mutual mistake of understanding the terms of the settlement." (Helbig Decl. in Opp. ¶ 26). However, Defendants' Memorandum of Law mentions mutual mistake only in passing without specifying what that mistake was. (Defs. Opp. Mem. at 6-7.) The undersigned finds no basis for considering that theory.

8

York law, to prevail on a claim for fraud in the inducement of a contract, a party must show all of the following five elements: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citations omitted); *see also Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976 (1st Dep't 2009). "When a settlement agreement or release is sought to be voided on the basis of fraud, 'a party must allege every material element of fraud with specific and detailed evidence in the record sufficient to establish a prima facie case.'" *Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 342 (S.D.N.Y. 2010), aff'd in part, vacated in part, remanded, 434 F. App'x 31 (2d Cir. 2011) (quoting *Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314, 318 (W.D.N.Y. 2006)).

The undersigned finds that Plaintiff did not make any material misrepresentation. As an initial matter, it is unclear whether either party could know exactly what representations were made by the other party because all statements were conveyed through the Mediator during private caucuses. (Mulholland Reply Decl. ¶ 8; Helbig Decl. ¶ 16; Tr. at 5:13-6:18.) More importantly, the alleged misrepresentation – that Plaintiff intended to call as witnesses the same former employees whom Defendant intended to call, and that those witnesses would substantiate Plaintiff's claims – is not false. Defendants do not show that Plaintiff lacked the intention to call the former employees as witnesses. Defendants also do not show that their testimony would <u>not</u> substantiate Plaintiff's claims.

In support of their contention that Plaintiff's statement was false, Defendants state that those witnesses later told Defendant Urciouli that they "would **not** testify for Plaintiff" and indeed had no contact with Plaintiff in more than two years. (Helbig Decl. ¶ 20 (emphasis in original).) Plaintiff in his Reply, however, states that he "does indeed have several witnesses that he anticipates testifying on his own behalf," including two brothers who "are expected to testify truthfully and that [] truth supports Plaintiff's allegations." (Mulholland Reply Decl. ¶¶ 10, 11.) Given these conflicting

9

representations, neither Plaintiff nor Defendants can definitively predict how the witnesses will testify and what effect their testimony will have on the outcome of trial. Such uncertainty is a common reason parties choose to settle rather than risk an unfavorable result. Thus, Plaintiff's statement about potential witness testimony, even in light of the witnesses' statements to Defendant Urciouli, is not false but only creates a dispute of fact to be resolved at trial.

There is also no evidence that Defendants were justified in their reliance on any statement made by Plaintiff. Defendants claimed that the only reason they agreed to the amount in the Mediation Agreement was Plaintiff's representation that he intended to call the former employees who would testify on his behalf. (*See* Helbig Decl. ¶ 19.)

Courts have declined to find justifiable reliance where the representation at issue relates to matters not peculiarly within a party's knowledge and the other party has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation. *See Turnbull v. Kling*, No. 98-CV-5925 (SAS), 1999 WL 672561, at *8 (S.D.N.Y. Aug. 26, 1999) (finding that plaintiff was not justified in relying on yet another vague representation by defendant that financing was imminent, given plaintiff's knowledge of defendant's alleged prior misrepresentations regarding financing, and in light of the fact that plaintiff had not been paid in six months).

Here, the issue of former employees being called as witnesses appears to have been first raised by Defendants, who told the Mediator that they "felt [they] had a very strong case, based upon [those] witnesses, who were former employees of Defendants," and who "were expected to testify that not only was Plaintiff a sporadic worker, he did not work there for 20 years." (Helbig Decl. ¶ 17.) Armed with such knowledge, Defendants were not justified in relying on any statement by Plaintiff to the contrary. Subsequent information contradicting Plaintiff's statements merely reinforced what Defendants already knew and had asserted during the mediation. "In assessing whether reliance on allegedly fraudulent misrepresentations is reasonable or justifiable, New York takes a contextual view,

10

focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 642 (S.D.N.Y. 2015) (quoting *JP Morgan Chase Bank v. Winnick,* 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004)). At the time Defendants agreed to the Mediation Agreement, they already had conflicting information about the witnesses' anticipated testimony. There was no reason to rely on Plaintiff's belief about the testimony when they had their own information leading to the opposite conclusion.

Because Plaintiff did not make a material misrepresentation and Defendants were not justified in relying on Plaintiff's representations, the Mediation Agreement is not voidable based on fraud.

Accordingly, the undersigned concludes that the Mediation Agreement is valid and should be enforced.

## II. Fairness Under *Cheeks*

Plaintiff requests that the Court approve the Mediation Agreement as fair and reasonable pursuant to *Cheeks*. (Pl. Mem. at 4-10, Dkt. 16-2.)

In evaluating the fairness of a proposed settlement of FLSA claims, the Second Circuit applies the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019). Courts consider the following factors: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Arango v. Scotts Co., LLC*, No. 17-CV-7174 (KMK), 2019 WL 117466, at *2 (S.D.N.Y. Jan. 7, 2019); *Lopez v. 41-06 Bell Blvd. Bakery, LLC,* No. 15-CV-6953 (SJ)(PK), 2016 WL 6156199, at *1 (E.D.N.Y. Oct. 3, 2016).

11

Pursuant to the Mediation Agreement, Defendant will pay Plaintiff $45,000.00. Plaintiff's counsel requests $14,985.00 in attorneys' fees and costs; if the request is granted, Plaintiff will receive $30,015.00 in net recovery. (Pl. Mem. at 6.) Plaintiff's counsel represents that the settlement amount reflects about 42% of Plaintiff's back wages. (*Id.*) Plaintiff's damages chart shows that from November 11, 2013 to May 8, 2019, Plaintiff's underpayments for minimum wage, overtime and spread of hours pay total $85,000. (*See* Dkt. 16-7 at 3-4.) Based on this calculation, Plaintiff's recovery would amount to 35% of his total expected recovery for unpaid wages.[3] The undersigned considers this range of recovery reasonable, in light of the risks and costs of litigation. The settlement will enable the parties to avoid the burdens and expenses of a trial that is likely to be lengthy, given that both parties stated their intention to call several former employees as witnesses. In addition, both parties face serious litigation risks due to their disputes regarding the witnesses' anticipated testimony.

The parties were represented by counsel throughout this matter, including during mediation when the Mediation Agreement was reached with the assistance of the Mediator, ensuring that the agreement was reached as the result of arms' length and informed discussion free from duress or coercion. As discussed above, the undersigned does not find Defendants' allegation of fraud during the mediation to be substantiated.

Plaintiff's counsel seeks $14,985.00 in attorneys' fees, including costs, which is approximately 33.30% of the settlement amount. (Pl. Mem. at 6, 9; Tr. at 7:3-6.) "[A] one-third contingency fee is a commonly accepted fee in this Circuit." *Calle v. Elite Specialty Coatings, Inc.*, No. 12-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014).

In support of the reasonableness of the proposed attorneys' fees, Plaintiff's counsel submitted a statement of his billable hours. Although the statement appears to summarize his work rather than

---

[3] Plaintiff's calculations fail to include underpayments in 2017 and 2018 for minimum wage violations when his hourly wages were less than the minimum wage, thus slightly undercounting his possible total recovery.

contain contemporaneous timesheets, it contains sufficient information to support counsel's expenditure of 25.7 hours on this case from September 7, 2019 to March 5, 2021 at the rate of $375.00 per hour, totaling $9,637.50 in attorneys' fees. (*See* Ex. F to Pl. Mem., Dkt. 16-8; Pl. Mem. at 9). "Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312 (PKC)(VMS), 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018). Plaintiff's counsel is a solo practitioner who focuses on FLSA and employment cases and was admitted to practice in February of 2013. Plaintiff's counsel has been litigating FLSA claims and employment claims throughout his career, and he has served as lead counsel on many of those cases. (*Id.*) An hourly rate of $375.00 was previously approved for Plaintiff's counsel in the Southern District of New York, when he had five years of experience in civil litigation, including wage and hour cases. *Calle v. NDG Coffee Shop, Inc.*, No. 16-CV-7702 (RJS), 2018 WL 1779347, at *2 (S.D.N.Y. Apr. 12, 2018).

In addition, counsel incurred costs in the amount of $400.00 for the court filing fee and $300.00 for the mediation fee, totaling $700.00. (*See* Ex. F to Pl. Mem., Dkt. 16-8.) The combined fees and costs total $10,337.00. The undersigned finds the requested amount, which reflects a multiplier of approximately 1.45 of the lodestar calculation, to be reasonable.

Finally, the Mediation Agreement states that Plaintiff agrees "to issue a release to [D]efendants subject to the Court's approval." (Mediation Agreement ¶ 2.) Plaintiff stated that his release is limited to wage and hour claims under the FLSA and NYLL in this lawsuit. (Tr. at 4:10-21.) The undersigned finds that this limited release is appropriate. *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) ("In FLSA cases, courts…routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues'" (quoting *Lopez*, 96 F. Supp. 3d at 181).)

The undersigned, thus, finds that the settlement amount and payment plan are fair and reasonable, that there are no releases beyond wage and hour claims, and that the attorneys' fees are reasonable. *See Wolinsky*, 900 F. Supp. 2d at 335-36. Accordingly, the undersigned respectfully recommends that the Mediation Agreement be approved.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Motion be granted and the Mediation Agreement be enforced as a binding settlement agreement. Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
          January 10, 2022